The C-Cation Technologies, LLC,  Mr. Hanley. Good morning, Your Honors. Walter Hanley for the Appellant C-Cation. What I intend to do, unless the Court has other priorities, is to address the Board's errors in construing two phrases in Step E of Claim 1 of the 83 patent, and they are reassigning by said central controller, said remote terminal, to a different and suitable signaling channel, and for communication henceforward. And if there's enough time, which I doubt, I'll address the Board's error in construing Step C. I think the Board's most glaring mistake in construing the reassigning phrase was failing to give due weight to the prosecution history, and specifically the argument that the applicant made in distinguishing the Growell reference. The prosecution history here, I think, is the most relevant intrinsic evidence because the reassigning phrase that's at issue, that is the key language of it, reassigning by said central controller, was added in an amendment to distinguish Growell. Actually, could you go through Figure 6 for me, the left-hand side of the 883 patent? I have to find Figure 6. In that flow chart, there's a box that says reassignment, and it was hard for me to really decipher what actions are going on, what choices and decision-makings are going on in that reassignment box. I think the answer is, and one can look at the patent spec that talks about this figure, is that there's a couple of scenarios that are addressed here, and it starts with the request that's made by the terminal. So if you have a terminal that is communicating with a central controller, and it is not seeking registration, but is sending a message for some other reason, what does registration message mean? Registration message would be a message seeking to register with the central controller. But in your Figure 6, the registration message, there is a yes, which means, yes, the controller can tell that it's requesting registration, but then there's also a no, which means the then registration message must mean something more than just specifically requesting registration. I think that it's a question mark, but there's no question mark in the box. Is this a registration message? And if the answer is yes, then it proceeds down the right side of the diagram, and if it's not, it proceeds down the left side, and it will do, if it goes down the left side, there'll be some signal processing, some ascertainment of what the message is about, and then the central controller in that context, that is where no registration is being requested, can make some judgment about whether a reassignment should occur of the channel. And if it does that, the answer is yes, then the action proceeds to the lower half of Figure 6, and there are a couple things that are going on there. One is, it looks at the channels that are currently being utilized, and that's box 200, and determines whether there is some availability on one of those channels for a reassignment of the requesting remote terminal to one of those channels, or if there is no channel currently available that's currently being utilized, it can select an available channel from a pool of channels that it has, and if it does either of those two things, then you would end up with box 230, and that is the assignment or reassignment if the requesting terminal already has a channel. I'm afraid to ask this question, but I'll ask it anyway, since we're here. What does the box called channel failure processing mean? I believe that it means that the terminal that is requesting registration is doing so because something happened with a channel that it was on that caused the termination relating to that. So if we go back to the prior box 150 question, newly registering terminal, and if the answer is no, it's not a newly registering terminal, then it looks at, did you make this request because there's some channel failure that I need to deal with, and therefore determine whether or not to give you a different channel. I think that's what that means, Your Honor. The patent doesn't really define what it means to be reassigning, does it? Well, it does. It doesn't define it in the sense of a stated definition or a lexicographic definition, but in the patent, reassigning is the central controller directing or causing or actually commanding the remote terminal to tune to a channel that the central controller has decided it should go to. So that's the action that takes place in the patent. So why is it that the MPT specifications don't do that? Because there are two things, and I think one relates to what the specification discloses, and the other relates to what the applicant distinguished in adding this limitation and prosecution. The MPT specifications do not, and the board made no finding that the MPT specifications, when the DSC is processing the registration request, has as a consideration some channel that it wants the remote terminal interacting with it to use. The board made no finding on that. The board relied on MPT's registration action as being the same thing as this reassigning limitation. They did, and that's the error, because in consideration of what's disclosed and more pointedly in consideration of what the applicant, how the applicant distinguished. Do we know what criteria the TSC controller uses in deciding whether to grant a registration request? The only thing that's, that is really pertinent, the answer to that is I don't have a full knowledge of that, but what the MPT specifications describe as it relates to registration is, it's shown in appendix 1460, section 10.1.1, and it says two things about registration. One, it's a method of recording the area, a group of areas where a radio unit is likely to be located in the network. So it's basically a secondary feature is that it provides a means of restricting the service of individual radio units by allowing the network to deny registration requests. So that's kind of a vetting or authorization function. In neither of those, is there any indication that the channel that the request for registration is being communicated on is a factor in making a judgment about to register or not? There's a discussion in the MPT about area codes. Correct. And so what I'm trying to figure out is, is every single control channel in the MPT associated with an area code, and an area, any given area code can include more than one control channel. No such disclosure, and nothing of that nature was pointed out to the board, and the board made a finding to that they picked up the geographic area consideration with some channel consideration. So it's just, the record is absent any disclosure or discussion in the MPT specs that says I register you based on the channel that you are using. Let me take you up 10,000 feet. Regarding STEPI, okay, I don't see anywhere in the record that you either requested the PTAB to construe the limitation found in STEPI or offer to claim construction of your own. So where is that in the record? Well, if I can just recap how the bidding went in terms of the PTAB. The patent owner submitted a petition. They, in their petition, they applied STEPI to the MPT specifications. CECATION, the, excuse me, the petitioner, rather, ARIS submitted a petition. CECATION responded, we said these terms should receive the ordinary meaning, but that's not what you are applying. In the reply, the petitioner came back and said, we think ordinary meaning applies, but that's not what you are applying. So there's a disagreement about the ordinary meaning, which, I guess, came to a head at the oral hearing. And in fact, at the oral hearing, there was some fairly extensive discussion of the construction reassigning, and there was argument. Your, your conception of ordinary meaning of the reassigning limitation is commanding transfer to a new channel? Well, it doesn't necessarily need to be by command, but the, but, and, and, and, and Dr. Hugot, our expert, said this. Authorizing? I mean, I'm trying to. The, the, the central controller must direct in some way the remote terminal to go to a particular channel. So it doesn't need to do it by command. In fact, there's an example. What, what is it in the board's construction where you feel like the board went astray? Was it where it said something like the, the controller in the claim in step B doesn't need to know the identity of the channel when it is performing the reassigning step? Yes, because in order for the central controller to be the director to, that connects a remote terminal with a specific channel. And that, that comes out of the argument that was made in prosecution. The intelligence about what channel the remote terminal should go to needs to be in the central controller. And the board said the central controller doesn't even know the channel. Right. Did the, did the PTAB construe or did it state its conclusions? It stated a conclusion that is, that is a statement that relates to the scope of the term. And the statement was, as I just outlined. Where's case law precedent that says stating conclusions equates construing claims? I think we cited a number of cases and, and probably one that I would commend to the court that it actually relates to the waiver argument that's being made. But in the, in the. You're in your rebuttal time. I'm sorry. So if I can just, if I can just provide that citation, Your Honor. It's in the Entertainer case. Entertainer Inc. versus Hulu LLC 660 Fed Appendix 943 at 947 and 948. And basically the, the, the court held that there was no waiver where the patent owner's position, this is in the context of a IPR. The patent owner's position was subsumed in argument, distinguishing part before the board, and the same was argued on appeal. Let me ask you another quick question. If MPT had said the way we work over here is the radio unit goes to the TSC controller and says I have confirmed, you know, an arrangement with channel XYZ. May you register me please so that I can get on to channel XYZ? And then the TSC controller says, yes, based on the information you give me, I'm granting you a registration. Would that be reassigning the radio unit to channel XYZ? If the permission or not relates to the TSC's determination that that is the proper channel, then the answer is yes. If it's not, and it instead relates to the purposes of registration that are delineated in the MPT specifications that I just discussed, then the answer would be no. Okay. With that, Your Honor, I'll reserve my time. Thank you. May it please the court, Andrew Sommer on behalf of the FLEs. I'd like to address some of the questions that the panel had before I dive into my argument about why the board's application of step E to the prior art was appropriate. Judge Wallach, you had asked whether there was something in the that it wasn't. You need to look no further than the demonstrative slides that were prepared for the purposes of this hearing. It's in the appendix at 5736. There is a very clear delineation between what is being presented as did we prove this fact as to step E and how the board should construe step C. And we submit that that is really consistent with the way the briefing unfolded. So both parties were operating under a plain language proposition for this step E? That's right, Judge Schen. Okay. So why isn't the plain meaning of reassigning by said central controller, you know, the remote terminal to a, you know, new channel, new and suitable channel, why doesn't that require the central controller to recognize and authorize the specific channel to which the terminal is going to be hooking up to? We don't believe that the plain language of the claim actually requires some recognition by the central controller of the specific channel. If you look at the language of step E, it's a method step. It says reassigning. What's doing this reassigning? It's a central controller. What's being reassigned a remote terminal and where is it being reassigned to a different and suitable communications channel? For what purpose? For communications henceforward. So if you look at the plain language of the claim, there's no knowledge requirement implicit, certainly no command, and I think both parties agree on that. But then I don't know what reassigning means. Well, the board had this same question for us and we actually provided what we understood. The board says that A31, the claim language does not require the central controller to determine the new signaling channel or to know the channel to which the remote terminal is being assigned. So, you know, let me just go with a hypothetical. Let's say I'm a student in school and I'm taking woodshop, but I don't like my woodshop class anymore and I decide, I really want to take beginning trumpet. So I go to the vice principal and say, well, first I go to the music teacher and they say, yeah, okay, you can be a trumpet player. And then I go to the vice principal and say, you know, I don't want to be in woodshop anymore. Can I transfer? And then they say, well, okay, you can transfer. But I don't know, but the vice principal doesn't know what class I'm transferring to. And he's just approving the act of transfer. Can it really be said in that hypothetical that the vice principal has reassigned me to beginning trumpet? Because you provided the new class, we submit the answer is yes. And that's exactly what's happening in the MPT specifications. I guess my instinct would be the answer is no, because the vice principal has no clue what my new class I'm going to be enrolling in. He's just granting me the authority to do some kind of transfer. So that feels a little different than reassigning me to beginning trumpet. Well, in the context of claim one, we have step D, which says we're going to determine whether a suitable and different channel is available. And in your hypothetical, that would be you choosing trumpet and you choosing and going to the music teacher and saying, hey, is the trumpet class available? Can I go there? And all you're doing is simply looking for authority from the principal to make that move. And that's exactly what these radio units in the MPT can be performed by the radio units. And so they can choose their channel, whether or not they actually have to communicate that choice explicitly so that the central controller looks at that channel and says, well, is that the right channel for you? That's beyond what the claim language actually requires, Your Honor. So I guess I just need a little more help here in understanding what does it mean for the central controller to reassign a terminal to a new and suitable channel? Well, when reassigning to a new and suitable channel, at least in one sense suggests that you are authorizing a move to a particular channel. And so therefore, if the prior art is simply granting a commission slip to go transfer without knowing the identity of the resulting channel connection, that it feels like there's potentially a gap there. Well, on the prior art, we submit that there actually is no gap because the radio units are choosing the channel. And if they're not allowed to access that channel, the response from the channel, and the process just repeats all over again. So there is, in our minds, no gap based on the prior art in terms of whether that channel authorization or the authorization, the registration acceptance, is a reassignment. Because it is channel dependent if you look at the scheme of how MPT is set up. The radio unit will confirm a channel. It says, this channel looks good to me. But I don't know if I can use this channel. So I need to check. I need to check with the principal and your hypothetical. And if it's OK, it's going to acknowledge it. It sounds like you're interpreting reassignment as authorization, not reassignment to me. Those two words have very different meanings. I mean, if part E said that the remote terminal would seek authorization from the central controller for a new channel that it had selected, then I can see how the prior art covers that. But that's not what it says. It says the central controller reassigns something. Right. How is giving authorization to somebody to move a channel the same as that entity specifically reassigning it to a different channel? Well, because the remote terminal has identified this particular candidate channel and it's saying, can I use this channel? And yes, that could also be bundled with an authorization or a registration process. But it is bundled that exact same way in the patent. What this black box terminal assignment means in the context of this patent, I think, is a bit vague. But we do know that at the end of the day, through a registration or not in the context of this patent, through authorization or not, that that terminal is ultimately commanded to tune to a different channel. That is the preferred embodiment. So in terms of the plain language of step E, we submit that the language here hence forward. Let me see if I can think this through. You're saying the TSC controller, while it doesn't know the identity of the channel, that's okay because the fact that in TSC, the radio units have already made the prearrangement with the specific channel. The controller in MPT somehow inherently understands that all of that lead up work has occurred. And so by granting the registration, it's in effect reassigning the radio unit to a specific channel? Yes. It's our position that in the MPT specifications, that radio unit is not reassigned to that new channel until it can communicate henceforward. That's what the claim limitation says. It is not reassigned. I get that. But the question is, for my purposes, what is doing the reassigning? So I understand that ultimately, at the end of the MPT process, the radio unit is getting reassigned to a new channel. But I want to get away from the passive voice. Let's go to active voice. What is doing the reassigning? We submit it to the TSC because it is the one with the final say about whether that new channel can be used at all. We think that that's actually supported by the MPT specifications. Mr. Hanley quoted a passage found at section 10.1. This appears at A1460 of the appendix saying that this registration is really a gatekeeper. It's an authorization step. And that's the purpose. But if you read that entire passage under section 10.1, one of its other purposes is to reduce call set up time and control channel loading. So this is a technique that is used to dictate which channels these radio units are permitted to do. And it's the logic in the TSC, the thing that manages the network, that actually performs that step. Where does it say control channel loading? In 1460? Yeah, it's at 1460, Your Honor. Just give me just a moment. Yeah, it's the second sentence of section 10.1.1. It says consequently reducing call set up time and control channel loading. And this is consistent with one of the responses that the TSC can give a radio unit when it looks to register on a particular channel. And that response is not just your registration is denied, but the network's overloaded. And that response, the network overloaded response, it's discussed in our briefing, causes that radio unit to yet go out and find another control channel to try this whole process on. What is your best understanding of what criteria the TSC and the MPT uses in trying to figure out whether to grant or deny a registration request? I think that leaves it up to the developer of the network. Network loading is obviously one of those. Control channel loading, since that's one of the purposes of this registration process. But exactly what criteria it looks at, these specifications are written from the perspective of the radio unit. So you design the radio unit to meet the requirements. The TSC design is more left up to engineers that are designing the system. So in terms of the arguments in terms of how we prove that MPT discloses these things, we think that the board's decision is actually sound in this regard. We don't think that this is really a claim construction issue. Nobody has proffered what they believe reassigning actually means. The patent is terse, I think, to say the least, on what a reassignment is. We think it's a reallocation or a repurposing. And we told that to the board. It's not in the board's decision. I don't think they felt that they needed to reach this particular issue. But if you're going to allow something to move from one place to another, and the claim language says that that's to a different and suitable channel, then that reassignment has accord. So we don't think that the patent specification really decides this issue. In terms of the prosecution history, I know Mr. Hanley wanted to touch on that briefly, and I expect him to when he stands back up. The ground reference is very different than what MPT is doing, because once those criteria on the control channels are changed, the radio units go out and look for those changes to the control channels, and will reassign themselves. There's no additional steps for communication. You're talking about growl? I am. And that particular reference in the statements made in prosecution are very different from the way that we submit that they've been characterized in the reply brief. It looked to us as if there were some important words cut out of the characterization of growl. In terms of how they approach the distinction over growl, we submit that there was no definition given to the term reassignment. All they said was growl reassigns itself, our central controller must do the reassignment. And that was the primary distinction. There were others in the prosecution history as well, but obviously they all deserve consideration here. We just don't think that those statements made during prosecution exclude what MPT does, because MPT, as a matter of fact, is a very different type of system. Is there anything in growl where the controller there does some kind of final blessing or permission? The word registration appears in growl, and from my reading of growl, growl is around the time of the development of GSM, and it's a Phillips patent. So there is a registration process, but this control channel shifting the load balancing that's performed by growl doesn't really hinge on this whole idea of registration at all. Once the base station in growl reassigns those channels, reassigns the codes to the channels, the radio units will go out, find those codes on the different channels, and then use those channels henceforward. We're submitting that because that happens and then the base station is no longer involved in the process, that there is no reassignment going on. It's very different than MPT. With that, I will cede the rest of my time. Thank you. Your Honor, Mr. Sumner was correct. I do want to touch on the prosecution history, because I think it does confirm that in fact reassigning does require authorization to go to a particular channel. The growl reference discloses a system in which a central controller attaches ranges of group codes to channels, and then the remote terminals in the system, they each have their own group code stored in memory, and they scan the channels, and they assign themselves or connect themselves up with the channel that has their group code. The central controller in that system can cause the remote terminals to move to different channels, and what it does is it changes the attachments or assignments of the ranges of group codes to the various channels, and the remote terminals then have to look for their new channel, and they reassign themselves. What the applicant said was the central controller there, the central controller is not reassigning because it doesn't allocate the channel and assign the remote terminal to that channel. That is, it doesn't connect up a specific remote terminal with a specific channel, and therefore, I think that supports our construction that the intelligence as to where the remote terminal needs to go, what channel needs to be in the central controller. Thank you.